UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


HASSON WILLIAMS,

                    Petitioner,

v.                                    Case No. 3:07-cv-594-J-33JRK

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.
_____


**ORDER**

**I. Status**

    Petitioner Hasson Williams, an inmate of the Florida penal
system who is proceeding *pro se*, initiated this action by filing a
Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition)
pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2000 state
court (Duval County, Florida) judgment of conviction for first
degree murder, armed burglary, two counts of aggravated assault and
attempted armed robbery on the following grounds: (1) ineffective
assistance of trial counsel for lack of due diligence in preparing
for trial, which resulted in the loss of Petitioner's right to a
speedy trial; (2) ineffective assistance of trial counsel for

_____

    [1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Walter A. McNeil is substituted for James R. McDonough
as the proper party Respondent having custody over Petitioner.

failure to move to suppress the firearm obtained pursuant to an illegal search and seizure; (3) ineffective assistance of trial counsel for calling the co-defendants (Elijah Crady and Randall Todd) as defense witnesses; (4) ineffective assistance of trial counsel for failure to call several witnesses who could have impeached the testimony of Robert Watkins and shown his motive for testifying falsely against Petitioner; and (5) ineffective assistance of trial counsel for failure to properly convey a plea offer, for improperly inducing Petitioner not to accept the plea offer and for failure, at the time of the offer, to discuss with Petitioner the details and strengths of the State's case against him, which deprived Petitioner of a reasonable opportunity to make an informed decision as to whether to accept the State's plea offer or proceed to trial.

Respondents have responded to the Petition. See Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #10) (hereinafter Response). In support of their contentions, they have submitted exhibits.[2] Petitioner was given admonitions and a time frame to respond. See Court's Order to Show Cause and Notice to Petitioner (Doc. #3). Petitioner has responded. See Petitioner's Traverse to Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #14); Petitioner's Notice of Filings Exhibits (Doc. #15). This case is now ripe for review.

---

[2] The Court will hereinafter refer to Respondents' exhibits, attached to their Response, as "Ex."

## II. Procedural History

On October 22, 1998, an Indictment was filed charging Petitioner with first degree murder (count one), armed burglary (count two), two counts of aggravated assault (counts three and four) and attempted armed robbery (count five). Ex. A at 13-16. Petitioner's jury trial was held June 13-15, 2000. Ex. D-G, Transcripts of the Jury Trial (hereinafter Tr.). The jury found Petitioner guilty as charged. Ex. A at 123-27, Verdicts; Tr. at 853-62.

On July 21, 2000, the trial court sentenced Petitioner to life imprisonment on count one, concurrent fifteen-year terms of incarceration on counts two, three and four and a concurrent thirty-year term of imprisonment on count five. Ex. A at 138-47; Ex. B at 263.

Petitioner, through counsel, appealed and raised the following ground on direct appeal: the trial court erred, as a matter of law, in refusing his request for the standard jury instruction pertaining to the "independent acts" of co-defendants. Ex. A at 154; Ex. H, Initial Brief of Appellant. The State filed an Answer Brief, and the Petitioner filed a Reply Brief. Ex. I; Ex. J. On August 31, 2001, the appellate court per curiam affirmed without issuing a written opinion. Williams v. State, 793 So.2d 940 (Fla. 1st DCA 2001); Ex. K. The mandate was issued on September 19, 2001. Ex. L.

On or about June 13, 2002, Petitioner filed a motion for post conviction relief, raising the following grounds: (1) ineffective assistance of trial counsel (Richard D. Nichols) for lack of due diligence in preparing for trial, which resulted in the loss of Petitioner's statutory right to a speedy trial; (2) ineffective assistance of trial counsel (Teresa J. Sopp) for failure to file a motion to suppress the firearm obtained pursuant to an illegal search and seizure; (3) ineffective assistance of trial counsel (Ms. Sopp) for calling the co-defendants as defense witnesses; (4) ineffective assistance of trial counsel (Ms. Sopp) for failure to call other witnesses who could have impeached the testimony of the State witness, Robert Watkins; (5) ineffective assistance of trial counsel for failure to properly convey the State's plea offers and for improperly inducing him to not accept the plea offers; and (6) Petitioner received an illegal sentence as to counts three, four and five because the sentences on these counts exceeded the statutory maximum. Ex. M at 1-32. The State filed a Response, and Petitioner filed a Reply. Id. at 88-96, 97-103.

An evidentiary hearing was conducted on February 22, 2006, at which Petitioner was represented by counsel. Ex. M at 153-200 and Ex. N at 201-316 (hereinafter EH Tr.). After the evidentiary hearing, the court issued an order denying the motion for post conviction relief in part and granting in part. Ex. M at 141-200; Ex. N at 201-339. The court denied the ineffectiveness claims in

4

grounds one through five, but granted Petitioner's ground six claim that his sentences on counts three, four and five were illegal. Ex. M at 141-51.  The court resentenced Petitioner to concurrent five-year terms of incarceration on counts three and four and to a concurrent fifteen-year term of incarceration on count five.  Id. at 151; Ex. Y at 16-17; Ex. Z.

Petitioner appealed.  Ex. N at 340.  The parties filed briefs. Ex. T; Ex. U; Ex. V.  On May 23, 2007, the appellate court per curiam affirmed without issuing a written opinion.  Williams v. State, 957 So.2d 1174 (Fla. 1st DCA 2007); Ex. W.  The mandate issued on June 20, 2007.  Ex. X.

The Petition (filed June 27, 2007; signed June 22, 2007) is timely filed within the one-year period of limitation.  See 28 U.S.C. § 2244(d); Response at 3-5.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

5

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. The pertinent facts of the case are fully developed in the record before the Court. <u>Smith v. Singletary</u>, 170 F.3d 1051, 1054 (11th Cir. 1999). Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1294-95 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000). Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication
> resulted in a decision that was: "(1) . . .
> contrary to, or involved an unreasonable[3]
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or (2) . . . based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding."   28 U.S.C. § 2254(d);
> Marquard, 429 F.3d at 1303.    The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision. See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

---

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not

8

> functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. <u>Id</u>. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of <u>Strickland</u>. We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted). As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Thus, "where the

>record is incomplete or unclear about
>[counsel]'s actions, we will presume that he
>did what he should have done, and that he
>exercised reasonable professional judgment."
>Id. at 1314 n. 15 (quoting Williams v. Head,
>185 F.3d 1223, 1228 (11th Cir. 1999)).
>Moreover, because the standard is an objective
>one, trial counsel's admission that his
>performance was deficient "matters little."
>Id. at 1315 n.16. We must also avoid "the
>distorting effects of hindsight" and evaluate
>the reasonableness of counsel's performance
>from the perspective of counsel at the time
>the acts or omissions were made. Strickland,
>466 U.S. at 689, 104 S.Ct. at 2065.

Jennings v. McDonough, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that his trial counsel
(Richard D. Nichols) was ineffective for failing to diligently
prepare for trial, which resulted in the loss of Petitioner's right
to a speedy trial. As acknowledged by the parties, Petitioner
raised this ground in his Rule 3.850 motion. In denying this
ground on the merits, the trial court identified the two-prong
Strickland ineffectiveness test as the controlling law and stated
in pertinent part:

>In the Defendant's first ground, he avers
>that his first court-appointed trial counsel,
>Richard D. Nichols, rendered ineffective
>assistance for "lack of due diligence in
>preparing for trial [which] resulted in the
>loss of defendant's statutory right to a
>speedy trial." (Defendant's Motion at 4-4C.)
>In support of his claim, the Defendant points
>to the Motion to Continue Trial that Mr.
>Nichols filed on March 26, 1999 (Exhibit

10

"D.")[4] In his Motion, Mr. Nichols stated that a continuance was necessary because, among other reasons, there had been difficulty in coordinating schedules between the three co-defendants' attorneys for purposes of completing discovery, and Mr. Nichols did not feel that he could provide effective assistance of counsel, "without additional preparation based primarily upon the new information provided by the Defendant less than one week before the filing of this motion." (Exhibit "D.") Initially, this Court notes that the granting or the denying of a continuance is within the sound discretion of the trial court.  <u>See Freeman v. State</u>, 761 So.2d 1055, 1071 (Fla. 2000); <u>citing</u> <u>Scott v. State</u>, 717 So.2d 908, 911 (Fla. 1998); <u>Turner v. Dugger</u>, 614 So.2d 1075, 1080 (Fla. 1992). Additionally, as the State points out, "an attorney may request, and the court may grant a continuance over the objection of the defendant." (State's Response at 1.)  <u>Taylor v. State</u>, 557 So.2d 138, 140 (Fla. 1st DCA 1990), <u>rev'd on other grounds</u>, <u>Heuss v. State</u>, 687 So.2d 823 (Fla. 1996).

In his Motion, Mr. Nichols was quite clear about his reasons for requesting that the Defendant's trial be continued. (Exhibit "D.") Additionally, Mr. Nichols' reasons for requesting the continuance were not "outside of the wide range of reasonable professional assistance," in that Mr. Nichols was preparing for the Defendant's first-degree murder trial where two co-defendants were also implicated in the murder. <u>Strickland</u>, 466 U.S. at 687. In fact, the Defendant's subsequently appointed counsel, Teresa J. Sopp, also filed a Motion for Continuance and cited similar reasons in support of her Motion, including not being able to complete discovery, not being able to review the discovery with her client, and as a consequence, needing more time to adequately

---

[4] Ex. A at 27-28, Motion to Continue Trial, filed March 26, 1999, by Richard D. Nichols.

> prepare for trial. (Exhibit "E.")[5]
> Accordingly, this Court finds that Mr. Nichols
> did not act "outside the wide range of
> reasonable professional assistance," when he
> filed the Motion to Continue Trial.
> <u>Strickland</u>, 466 U.S. at 687. As the Defendant
> has failed to prove error as required by
> <u>Strickland</u>, the Defendant's first claim is
> denied.

Ex. M at 142-44.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness

---

[5] Ex. A at 63-65, Motion for Continuance, filed March 20, 2000, by Teresa J. Sopp.

12

inquiry, there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).  Here, counsel's performance was not deficient.

Under the speedy trial provision of Fla. R. Crim. P. 3.191(a), every defendant charged with a felony in Florida is required to be brought to trial within 175 days of arrest.  A defendant's request for a continuance waives his right to a speedy trial.  Randall v. State, 938 So.2d 542, 544 (Fla. 1st DCA 2006).  "This waiver applies even in situations in which the attorney requests the continuance without consulting the defendant or against the defendant's wishes."  Id. (citations omitted).

On October 2, 1998, Petitioner was arrested on the charge of first degree murder and other crimes in a case with multiple co-defendants.  Ex. A at 1-2, 13-16.  On October 8, 1998, Richard D.

Nichols was appointed to represent Petitioner.[6]  <u>Id</u>. at 8.   On March 26, 1999, Mr. Nichols moved to continue Petitioner's trial, scheduled for March 29, 1999.  <u>Id</u>. at 27-28.   In the motion, he stated that the motion was based on, among other things, the facts that Petitioner had two co-defendants who were represented by court-appointed attorneys and that discovery could not be completed by the scheduled trial date because of difficulty in coordinating schedules.  <u>Id</u>. at 27.  Further, he noted that, during the week of March 22, 1999, Petitioner had provided him with new information which would materially and substantially impact upon his preparation for the trial.  <u>Id</u>.  He concluded that "the Defendant does not join in this motion even though the above has been explained to him in detail."  <u>Id</u>. at 28.

Petitioner was charged with a crime punishable by death in a case involving multiple co-defendants.  Mr. Nichols had a duty to be prepared for trial, and under the circumstances, his request for a continuance was not deficient performance.  His actions were reasonable, as further evidenced by the fact that his successor counsel, Teresa J. Sopp, moved for a continuance based on similar grounds, and with Petitioner's agreement, approximately a year later.  <u>Id</u>. at 63-65.

---

[6] The Public Defender's Office withdrew from Petitioner's case due to a conflict of interest since the office was representing co-defendant Randall Dennis Todd.  Ex. A at 8, Order Allowing Public Defender to Withdraw and Appointing Attorney.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, the ineffectiveness claim is without merit.

## B. Ground Two

As ground two, Petitioner claims that his trial counsel (Teresa J. Sopp) was ineffective for failure to move to suppress the firearm obtained pursuant to an illegal search and seizure. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion. In denying this ground on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's second ground for relief, he alleges that defense counsel, Teresa J. Sopp, rendered ineffective assistance for failing to file a motion to suppress the firearm that was found under a mattress in the apartment of Arnette Pickford. (Defendant's Motion at 2.) "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious." <u>Zakrzewski v. State</u>, 866 So.2d 688, 693-95 (Fla. 2003), <u>quoting</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986). An issue with respect to the Defendant's instant claim was whether he possessed a reasonable expectation of privacy in the place where the firearm was found.

On October 2, 1998, the Defendant was arrested outside of the Cascade Apartments, 428 Alderman Road, Apartment 302, where he periodically stayed with his girlfriend, Nujae Pickford. (Exhibit "A," pages 11-14, 81-83.)[7] Nujae Pickford lived in Apartment 302, as did her mother, Arnette Pickford, who was the lease-holder of the apartment. (Exhibit "A," pages 81, 100.) Nujae's grandmother, Anne Burkes, was the property manager of the Cascade Apartments. (Exhibit "A," pages 81, 100.) At the evidentiary hearing on the Defendant's Motion for Post Conviction Relief, Nujae and Arnette Pickford testified that law enforcement officers did not ask for permission to search the apartment, and the women did not give the officers permission to search. (Exhibit "A," pages 82, 100.) Arnette Pickford and Anne Burkes also testified that law enforcement did not present a search warrant. (Exhibit "A," page 101.) However, law enforcement officers told Ms. Burkes that there were some problems at Apartment 302 and asked Ms. Burkes to "let them in the apartment," which she did. (Exhibit "A," pages 112-113.) During the search of the apartment, a Ruger firearm was discovered under Nujae's mattress. (Defendant's Motion at 5-1 - 5-2.) It is this firearm that the Defendant claims that Ms. Sopp should have sought to have suppressed, because he asserts that he lived in Apartment 302 and therefore had a reasonable expectation of privacy, such that law enforcement could not search the apartment and seize the firearm without a warrant or an exception to the warrant requirement.

In <u>Minnesota v. Olson</u>, 495 U.S. 91, 98-99 (1990), the United States Supreme Court "held that an overnight guest possessed a legitimate expectation of privacy and was entitled to the protection of the Fourth Amendment." <u>State v. Washington</u>, 884 So.2d 97, 98-99 (Fla[.] 2nd DCA 2004). In the instant case, the Defendant claims that he had an expectation of privacy

---

[7] <u>See</u> EH Tr.

in Apartment 302 because that is where he resided "almost every night." (Exhibit "A," pages 15, 18-19.) However, when he was arrested, the Defendant gave an address in Greensboro, North Carolina, as his residence. (Exhibit "A," pages 15, 18-19; Exhibit "F.") Later, in preparation for his Pre-Sentence Investigation Report, the Defendant gave his probation officer a second address as his residence, 202 Elm Street, and a third address of 19th and Main Street as the address where he lived before 202 Elm Street. (Exhibit "A," page 15.) At neither his arrest nor in preparation for sentencing, did the Defendant list 428 Alderman Road, Apartment 302, as his residence.

Ms. Sopp testified at the evidentiary hearing that she believed that she considered filing a motion to suppress, and that as far as she could recall, the Defendant lacked standing to assert a Fourth Amendment claim. (Exhibit "A," page 65-66, 108.) She recalled that the Defendant gave a North Carolina address and that at least one, possibly two persons, had consented to the search of the apartment. (Exhibit "A," pages 65-66.) Ms. Sopp also noted that the firearm that was discovered in Apartment 302 was never identified as a firearm that was used during the homicide. (Exhibit "A," page 66.) As a result, Ms. Sopp recalls that she did not find that there were any grounds for her to file a motion to suppress. (Exhibit "A," pages 64-66.) This Court notes that an obstacle to Ms. Sopp's recollection of what occurred in the Defendant's case was that her files were not in the same order that they had been at the time of trial and that some parts of the file were missing. (Exhibit "A," pages 44-45, 53-59; 71-72, 75-79.) Consequently, Ms. Sopp had no choice but to rely solely on her memory of what occurred in preparation for a trial that occurred more than five years earlier.

Testimony at the evidentiary hearing supported the fact that the Defendant periodically stayed and slept at Apartment

302, and that he was, at minimum, entitled to the expectation of privacy that is afforded to an overnight guest. (Exhibit "A," pages 13-14, 82-83, 101[-]102.) <u>See Minnesota v. Olson</u>, 495 U.S. 91, 98-99 (1990); <u>see also</u> <u>State v. Washington</u>, 884 So.2d 97, 98-99 (Fla. 2nd DCA 2004); <u>Davis v. State</u>, 582 So.2d 61, 61-62 (Fla. 1st DCA 1991). Thus, despite Ms. Sopp's testimony that she believed that there were no grounds to support a suppression motion, this Court finds that it was error for Ms. Sopp not to file a motion to suppress, where, at minimum, the Defendant was an overnight guest with an expectation of privacy in the room where he stayed and where the firearm was discovered by law enforcement.

The issue, then, is whether the Defendant was prejudiced by Ms. Sopp's failure to file a motion to suppress the firearm. The prejudice prong of the <u>Strickland</u> [test] requires a showing that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687. The Defendant cannot demonstrate prejudice because the State did not have to produce the firearm at trial to prove that the Defendant possessed or carried a firearm during the commission of the instant crimes. The State could rely on the witness testimony and the Defendant's own admission that he carried the firearm. (Exhibit "G.") On October 2, 1998, the Defendant signed a written statement, specifically noting that it was made without promise or coercion. (Exhibit "G," page 1.) In that statement, the Defendant explained his role in the instant case:

> I, Hassan Williams, pulled out my handgun, a Rueger [sic] from my waist. The gun was on my, Hasson Williams, side. I, Hasson Williams, held the gun in my, Hasson Williams, hand. I, Hasson Williams, looked towards T.J. who was arguing with a subject inside the trailor [sic]. The old guy took my, Hasson

18

> Williams, gun from my hand. I,
> Hasson Williams, ran out of the
> house.

(Exhibit "G," page 2.)[8] The Defendant also
explained why he carries a gun:

> I, Hasson Williams, carry a gun
> because I, Hasson Williams, have a
> pretty girlfriend and I, Hasson
> Williams, refuse to get beat up in
> front of her because it is
> embarrassing and I, Hasson Williams,
> refuse to get embarrassed in front
> of her.

Exhibit "G," page 2.) Because the State did
not have to produce the firearm at trial in
order to prove that the Defendant possessed or
carried the firearm during the commission of
the instant crimes, the Defendant has failed
to prove prejudice as required by <u>Strickland</u>,
and the Defendant's second ground is denied.

Ex. M at 144-47.

As noted previously, upon Petitioner's appeal, the appellate
court per curiam affirmed the trial court's order. Accordingly,
the claim was rejected on the merits by the state trial and
appellate courts. Thus, there are qualifying state court
decisions. This ground should be addressed applying the
deferential standard for federal court review of state court
adjudications, as required by AEDPA. Upon a thorough review of the
record and the applicable law, it is clear that Petitioner is not
entitled to relief on the basis of this claim because the state

---

[8] Ex. N at 338-39, Petitioner's Statement, dated October 2,
1998.

courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

It is noteworthy that, at the jury trial, three victims testified that they had observed Petitioner in possession of a firearm at the time the crimes were committed. Tr. at 261-64, 348-49, 372-76; EH Tr. at 226. Moreover, Petitioner provided a written statement to Detective Bialkoski, in which he admitted that he was in possession of a gun at the time of the offense. Ex. N at 338-39; EH Tr. at 226. Petitioner's statement, in pertinent part, stated that he habitually carried a gun at his waist and then pulled it out during the incident in question. Ex. N at 338-39.

### C. Ground Three

As ground three, Petitioner claims his trial counsel (Ms. Sopp) was ineffective for calling the co-defendants (Elijah Crady and Randall Todd) as defense witnesses. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion. In denying this ground on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's third ground, he avers that defense counsel, Ms. Sopp, rendered ineffective assistance in calling the co-defendants as defense witnesses. (Defendant's

20

Motion at 5- 5-9.) At the evidentiary hearing, the Defendant testified that Ms. Sopp told him that it was her strategy to call the co-defendants as witnesses at trial, but that the Defendant opposed this strategy. (Exhibit "A," pages 10-11.) Ms. Sopp also testified that her strategy for calling the co-defendants was to demonstrate that the Defendant "was merely an accessory after the fact" and that the co-defendants "were the shooters." (Exhibit "A," page 59.) She also wanted the jury to know that the co-defendants were more culpable than the Defendant but ended up "with better deals." (Exhibit "A," page 59.) They were also called in an effort to impeach the State's witness, Robert Watkins. (Exhibit "A," page 60-61, 69.) The record is clear that Ms. Sopp made a tactical decision to call the co-defendants as witnesses at trial to support the defense theory that the Defendant was merely an accessory after the fact and to impeach Mr. Watkins. Further, it is well established that tactical decisions do not constitute ineffective assistance. <u>Whitfield v. State</u>, 923 So.2d 375, 381 (Fla. 2005); <u>Songer v. State</u>, 419 So.2d 1044, 1047 (Fla. 1982); <u>Gonzalez v. State</u>, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, this Court finds that Defendant has failed to establish error on the part of counsel, and the Defendant's third ground is denied.

Ex. M at 147-48.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court

adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that Ms. Sopp's performance was reasonable is even stronger since she is an experienced criminal defense attorney.[9] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

---

[9] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Ms. Sopp was admitted to the Florida Bar in 1978, is board certified, since 1990, in the area of criminal trial practice and is a member of the criminal law section of the Florida Bar. See http://www.floridabar.org.  At the evidentiary hearing, she testified that she had practiced law twenty-eight years (with nine of those years in the Public Defender's Office) and had tried over one-hundred cases, including homicide and death penalty cases.  EH Tr. at 190, 214-15.

"[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).  Here, counsel's performance was not deficient.

Ms. Sopp testified regarding her reasoning for calling the co-defendants to testify.

> It seems to me that our defense in this case was that Mr. Williams was merely an accessory after the fact, if I remember correctly.  And it seems like Crady and Todd were the shooters.  They somehow got the better deals.  They were the more culpable people and they got better deals.
>
> So I wanted to show the jury that they were not telling the truth about -- that they got better deals and that they were the bad people to help bolster his case that he was an accessory after the fact.  That was our defense in this case, that he was there but he did not know what was going on.  He had no idea there was going to be a shooting and that he was just in the getaway car.  That was why we called them.
>
> And it seems to me that we were able to show what deals they got; that they had pleaded to lesser-included cases.  So that that's our goal, was to try to get him a lesser-included case -- a lesser-included count.
>
> . . . .

23

> I mean I wanted to show that they were the
> shooters and I mean it was definitely helpful
> to Mr. Williams to show that they got a better
> deal because you can always hope for jury
> sympathy.  At least they should get the same
> thing as the most guilty people or less.

EH Tr. at 211-12, 220-21.  Ms. Sopp also called the co-defendants
to impeach the credibility and character of State witness Robert
Watkins (the getaway car driver) whom she believed to be of a
"questionable character."  Id. at 212-13.

Even assuming arguendo deficient performance by defense
counsel, Petitioner has not shown prejudice.  Petitioner has not
shown that a reasonable probability exists that the outcome of the
case would have been different if his lawyer had given the
assistance that Petitioner has alleged Ms. Sopp should have
provided.  Thus, the ineffectiveness claim is without merit.

### D. Ground Four

As ground four, Petitioner claims his trial counsel (Ms. Sopp)
was ineffective for failure to call several witnesses (Wagavo
McCray, Melissa Singleton, Juba McCray, Jamal Watkins, Otis Oaks,
Samantha Brown, Billy Epperson, Najue Pickford, Rossano Gibbs,
Anthony Cooper and Anwan Cooper) who could have impeached the
testimony of Robert Watkins and shown his motive for testifying
falsely against Petitioner.  As acknowledged by the parties,
Petitioner raised this ground in his Rule 3.850 motion.  In denying
this ground on the merits, the trial court identified the two-prong

Strickland ineffectiveness test as the controlling law and stated

in pertinent part:

> The Defendant's fourth ground for relief
> is that defense counsel, Ms. Sopp, failed to
> call other witnesses who could have impeached
> the testimony of State witness, Robert
> Watkins. (Defendant's Motion at 5- 5-10.) At
> the evidentiary hearing, the Defendant
> testified that he gave Ms. Sopp a list of
> witnesses who could impeach State witness
> Robert Watkins. (Exhibit "A," page 31.) He
> also presented some of those witnesses at the
> evidentiary hearing, including Nujae Pickford,
> Juba McCray, and Arnette Pickford. Notably,
> the Defendant admitted in his testimony that
> none of the witnesses he provided to Ms. Sopp
> were present when the instant crimes occurred.
> (Exhibit "A," pages 31-32.)

> The witnesses testified that they had
> personally seen State witness Robert Watkins
> either use drugs or carry a gun. (Exhibit "A,"
> page 86-87, 95, 103.) However, what they
> personally observed was inconsistent and could
> have been perceived as biased based on their
> relationship with the Defendant. Nujae
> Pickford, the Defendant's girlfriend, saw Mr.
> Watkins use marijuana and carry a gun.
> (Exhibit "A," pages 86-87.) Juba McCray, the
> Defendant's friend since childhood, saw Mr.
> Watkins use cocaine. (Exhibit "A," page 95.)
> Arnette Pickford, the Defendant's girlfriend's
> mother, saw Mr. Watkins "use drugs." (Exhibit
> "A," page 103.) She also testified that she
> overheard a conversation in her kitchen
> between Mr. Watkins and the Defendant in which
> they were discussing what sounded like the
> robbery in the instant case. (Exhibit "A,"
> pages 103-105.) Based on this testimony from
> Arnette Pickford, she would not have been a
> helpful defense witness because she could
> testify to overhearing Mr. Watkins and the
> Defendant planning the instant crimes.

> As explained in ground three, supra, Ms.
> Sopp testified that her strategy for calling

the co-defendants was to impeach State witness, Robert Watkins. (Exhibit "A," page 60-61, 69.) The record is clear that Ms. Sopp made a tactical decision to call the co-defendants to impeach Mr. Watkins. Though the Pickfords and Juba McCray could have testified to impeach Mr. Watkins, their testimony likely would have been perceived as biased based on their close relationships with the Defendant. It is well established that tactical decisions do not constitute ineffective assistance. Whitfield v. State, 923 So.2d 375, 381 (Fla. 2005); Songer v. State, 419 So.2d 1044, 1047 (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, this Court finds that Defendant has failed to establish error on the part of counsel, and the Defendant's fourth ground is denied.

Ex. M at 148-49.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. As previously noted, the presumption that Ms. Sopp's performance was reasonable is even stronger since she is an experienced criminal defense attorney. Here, counsel's performance was not deficient. A review of the testimony of Petitioner's witnesses at the evidentiary hearing shows that Ms. Sopp was not ineffective for failing to call them at trial. See EH Tr. at 232-51.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged Ms. Sopp should have provided. Any such testimony regarding Robert Watkins' use of drugs and possession of a firearm would have been cumulative to that of other witnesses at the trial. Tr. at 543-600, 604-14 (testimonies of Elijah Crady and Randall Tood). Thus, the ineffectiveness claim is without merit.

## E. Ground Five

As ground five, Petitioner claims trial counsel (Ms. Sopp) was ineffective for failure to properly convey a plea offer, for improperly inducing Petitioner not to accept the plea offer and for failure, at the time of the offer, to discuss with Petitioner the details and strengths of the State's case against him, which deprived Petitioner of a reasonable opportunity to make an informed decision as to whether to accept the State's plea offer or proceed to trial.  Specifically, Petitioner alleges in pertinent part:

> Approximately two (2) months prior to trial[,] defense counsel met with Mr. Williams, and informed him that the State had made a plea offer to reduce the charge to second degree murder with a sentence of 22 years to life.  Mr. Williams was discouraged from taking the deal when defense counsel informed him that by accepting the State's offer, he would in effect be agreeing to being sentenced to anything, including a life sentence with no chance of parole, and thus, spending the rest of his life in prison.

Petition at 11C.

As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion.  In denying this ground on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> In ground five, the Defendant alleges that trial counsel, Ms. Sopp, failed to properly convey the State's plea offers to the Defendant and "improperly induced the defendant not to accept the plea offer." (Defendant's Motion at 5-15.)  At the evidentiary hearing, the Defendant testified

28

that he was presented with two plea offers, the first offer for 40 years and the second offer for 22 years to life. (Exhibit "A," pages 8-9.) According to the Defendant, Ms. Sopp told him she would not take either offer and that he should reject the offers. (Exhibit "A," page 9, 11.) However, on cross examination, **the Defendant admitted that after discussing the offers with Ms. Sopp, it was his decision to reject both offers.** (Exhibit "A," pages 32-35.) In fact, he explained why he had no interest in taking the offer of 22 years to life:

| | |
|---|---|
| Defendant: | I didn't like that offer because it's still an open-ended deal right there. If you would have give [sic] somebody a solid number, yes, but you just can't say 22 to life because you still could go up there and get screwed. |
| State: | So you didn't like the offer, did you? |
| Defendant: | No. |
| State: | That was a bad offer? |
| Defendant: | It was a terrible offer. |
| State: | You rejected the offer? |
| Defendant: | Yes, sir. |

(Exhibit "A," page 35.) Ms. Sopp testified that in her 28 years of legal experience, it is her practice to present her client with the "pros and cons" of a plea offer and that it is the client who makes the ultimate decision

whether to take the offer. (Exhibit "A," pages 38, 45-47, 62-63, 73-74.) She further testified that, "I don't ever tell a client to reject it or accept it." (Exhibit "A," page 47.) In light of both the Defendant's and Ms. Sopp's testimony, **this Court finds that Ms. Sopp adequately conveyed the plea offers to the Defendant, and after consulting with Ms. Sopp, the Defendant made the ultimate decision to reject the offers.** As the Defendant has failed to demonstrate error on the part of counsel, the Defendant's fifth ground is denied.

Ex. M at 149-50 (emphasis added).

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. After the evidentiary hearing, the state court resolved the credibility

issue in favor of believing counsel's testimony over that of Petitioner. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, it is clear that Petitioner's claim is wholly unsupported and therefore, the claim must fail.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. As previously noted, the presumption that Ms. Sopp's performance was reasonable is even stronger since she is an experienced criminal defense attorney. Here, counsel's performance was not deficient.

As a twenty-eight year practitioner of law, Ms. Sopp explained her practice in presenting a client with a plea offer.

> If there were any offers made, I would have relayed them to Mr. Williams, that he was facing a first-degree murder charge with a mandatory sentence of life in prison. If there is an offer made that the state makes to me, it is my ethical obligation to convey it to the client, and I would have done that.
>
> . . . .
>
> If there were an offer, if there had been an offer, I can advise him of what the pros and

31

cons are of the offer, but he has to make the ultimate decision.  I don't ever tell a client to reject it or accept it.  The client has to make that decision.

. . . .

I tell a client, you know, here's what you could get, here's [sic] is what this is going to work out.  If it was a 22 to life, it would have had to have been a second degree and there would have had to have been a sentencing hearing, so I would have explained putting on mitigation in a sentencing hearing.  I would have gone through, you know, any prior records.  We would have talked about that.  I know that I talked to Mr. Williams almost daily up until the time that we went to trial.  So if there was an offer, I would have made it.

And I don't ever tell a client what to do.  I tell a client what the pros and cons are, but the client has to make the decision.

EH Tr. at 197, 199, 225.  She further stated that she would not have advised Petitioner Williams that the State of Florida had a weak case.  Id. at 226.  She explained that the State of Florida's case "wasn't a weak case."  Id.  There were three eyewitnesses who identified Petitioner with a gun in his hand as being on the premises when the killing took place, and Petitioner had also given a written statement admitting his involvement.  Id.  She stressed that the defense in the case was that Petitioner Williams was "merely an accessory after the fact," and that the co-defendants were the shooters and "the more culpable people."  Id. at 211.  As stated by the post conviction court, Ms. Sopp "adequately conveyed the plea offers to [Petitioner], and after consulting with Ms.

Sopp, [Petitioner] made the ultimate decision to reject the offers." Ex. M at 150.

For all of the previously-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 16th day of July, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

sc 7/15
c:
Hasson Williams
Ass't Attorney General of Record

33